## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRACY DORE, individually and on behalf of all others similarly situated, | Case No.: 2:19-cv-1601 |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Tracy Dore ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant") and upon information and belief alleges the following:

### PARTIES

1.      Plaintiff Tracy Dore is a citizen and resident of Pennsylvania.

2.      Defendant Wells Fargo Bank, N.A., is a national bank with a main office in Sioux Falls, South Dakota. Wells Fargo Bank, N.A., is wholly owned by Wells Fargo & Company ("WFC"), a Delaware corporation and bank holding company with a principal place of business in California.

### JURISDICTION

3.      This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendant, and (4) there are more than 100 Class members. This

Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims within the Court's original jurisdiction.

4.     This Court has personal jurisdiction over Defendant because Defendant has extensive business and banking contacts with Pennsylvania and a substantial part of the events or omissions giving rise to Plaintiff's claims arise out of Defendant's contacts with Pennsylvania, including the entering into Plaintiff's mortgage, the denial of Plaintiff's HAMP modification, and the foreclosure of Plaintiff's home.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendant is subject to the Court's personal jurisdiction and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Pennsylvania, including the entering into Plaintiff's mortgage, the denial of Plaintiff's HAMP modification, and the foreclosure of Plaintiff's home.

## **FACTUAL ALLEGATIONS**

6.     The Home Affordable Modification Program ("HAMP") was created by Congress as part of the Troubled Asset Relief Program ("TARP") in response to the 2007 subprime mortgage crisis. HAMP was meant to help homeowners facing financial hardship by modifying the terms of the mortgage and providing subsidies to lower their mortgage payments to 31% of their monthly gross income.

7.     A homeowner can apply or be considered for a HAMP mortgage modification through their mortgage lender. It has certain requirements, including documented financial hardship and an ability to make monthly mortgage payments after a modification.

8.      As a HAMP servicer, Defendant was required to consider all eligible mortgage loans for a HAMP modification.[1]

9.      HAMP uses a net present value ("NPV") model to evaluate whether it is beneficial to modify a mortgage under the program (an "NPV positive" result), or whether it would be better to maintain the current terms of the mortgage (an "NPV negative" result). "The test result is NPV positive when the total discounted value of expected cash flows for the modified loan is higher than the total discounted value of expected cash flows for the unmodified loan."[2] If the calculation results in an NPV positive result for a qualified applicant's mortgage, then the mortgage lender is required to perform a HAMP modification.

10.     One component of the NPV calculation is attorneys' fees associated with a foreclosure. Defendant's automatic NPV calculation software miscalculated attorneys' fees, resulting in hundreds of homeowners' NPV calculations being incorrect for loan modifications pursuant to the requirements of government-sponsored enterprises (such as Fannie Mae and Freddie Mac) or HAMP.

11.     By 2011, due to oversight by the Office of the Comptroller of the Currency ("OCC") Defendant knew that it had been improperly auditing its mortgage modification software, resulting in hundreds of incorrect NPV calculations and homeowners being denied HAMP modifications that they were entitled to under federal law.

12.     The OCC found that Defendant had failed to adequately oversee its foreclosure procedures and processes.

---

[1] Supplemental Directive 09-01, *Introduction of the Home Affordable Modification Program* (Apr. 6, 2009), https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd0901.pdf.
[2] Home Affordable Modification Program, *Base Net Present Value (NPV) Model V7.0 Model Documentation* (Oct. 26, 2015), https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/BaseNPVModelDocumentationv7.pdf.

13.     As part of the OCC's oversight, Defendant agreed to a consent decree that required Defendant to ensure compliance with HAMP, a basic requirement applicable to all mortgage lenders who use industry-standard auditing and compliance practices. The consent decree directed Defendant's Board of Directors to implement and oversee these policy changes.

14.     Despite their knowledge of their incorrect HAMP modification calculations and the OCC consent decree, Defendant did not attempt to fix its software and only discovered the error in the software in August 2013.

15.     Defendant, rather than face further scrutiny from the OCC, concealed the software error and continued to erroneously deny hundreds of homeowners HAMP modifications.

16.     Despite knowledge of the tremendous financial hardship that HAMP modification applicants face, Defendant failed to audit its calculation software.

17.     In fact, Defendant was not required to create its own software for HAMP modification calculations. The federal government provides free software to mortgage lenders for this purpose, and yet Defendant refused to use it, instead relying on its own faulty software.

18.     Defendant should have used the federal government's software since the initiation of HAMP was to avoid any possibility of erroneously and negligently denying anyone a HAMP modification.

19.     In 2015, the OCC found that Defendant and the Board of Directors still were not in compliance with the 2011 consent decree with regard to auditing and compliance with HAMP. The OCC modified the consent decree to impose stricter requirements on Defendant.

20.     In 2016, the OCC found that Defendant engaged in "unsafe or unsound banking practices" and fined Defendant $70 million for failing to properly audit its implementation of

4

HAMP, causing 184 customers to be erroneously denied HAMP modifications between March 2013 and October 2014.

21.     Still, Defendant failed to fix the software calculation error that they discovered in 2013 which has resulted in 625 customers being erroneously denied HAMP modifications.

22.     The faulty HAMP calculation software and the negligent lack of oversight, auditing, and compliance by Defendant are products of Defendant's years-long failure to adhere to industry standards and failure to consider the interests of its customers.

23.     In late 2016, the public learned that Wells Fargo had failed to oversee its branches, and millions of fraudulent accounts were opened by Wells Fargo employees to charge customers for unwanted financial products.

24.     In the fallout of the fraudulent account scandal, Wells Fargo reorganized its Board of Directors in early 2018.

25.     Following the reorganization, Wells Fargo announced in its second quarter 2018 10-Q that it was aware of the software error that it discovered in 2013, as well as other errors that had denied hundreds of homeowners HAMP modifications.[3]

26.     Defendant then sent letters to Plaintiff and Class members in late 2018 informing them of the "faulty calculation." Some of the application denials occurred more than eight years prior to the Class member receiving this letter.

27.     Plaintiff and the Class are, or were, homeowners who applied or were considered for HAMP modifications through their mortgage lender, Wells Fargo, but despite being qualified and having an NPV positive calculation, Wells Fargo erroneously denied them a HAMP modification.

---

[3] Wells Fargo & Company Form 10-Q, SEC (Aug. 3, 2018),
https://www.sec.gov/Archives/edgar/data/72971/000007297118000408/wfc-06302018x10q.htm.

28.     Because Plaintiff and Class members were denied a loan modification by Defendant, they faced even greater financial hardship and, in many cases, foreclosure.

29.     Defendant foreclosed Plaintiff's home and approximately five hundred homes of other Class members who were erroneously denied HAMP modifications.

30.     Approximately 300 Class members continued to struggle with high mortgage payments that would have been lowered had Defendant correctly calculated their NPVs. Due to this financial hardship, Class members have had to default on loans, take out additional, high-interest loans, sell property, and/or file for bankruptcy.

31.     Defendant attempted to mitigate the financial burden that Plaintiff and Class members had been experiencing for years by allocating a mere $8 million to affected homeowners—less than $13,000 per homeowner, many of whom lost their homes as a result of Defendant's negligence.

32.     Defendant's mitigation effort is wholly insufficient to compensate for the financial burdens that Plaintiff and Class members were forced to experience as a result of Defendant's unlawful, unfair, deceptive, and unconscionable practices, negligence and otherwise wrongful conduct as alleged herein.

## PLAINTIFF FACTUAL ALLEGATIONS

33.     Plaintiff acquired her home in or around 2008 and subsequently entered into a mortgage agreement with Defendant subject to a lien on the home of approximately $50,000. Her mortgage payments were approximately $500 a month.

34.     Plaintiff's mortgage was owned, securitized, or guaranteed by a federal government agency (such as the Federal Housing Administration) or a government-sponsored enterprise (such as Fannie Mae and Freddie Mac) with Defendant acting as the servicer of the mortgage.

35.     Pursuant to the mortgage agreement and federal regulations, Defendant was required to consider Plaintiff for available loss mitigation options to cure a default, such as a mortgage loan modification.

36.     Plaintiff experienced financial hardship as a result of losing her job in or around 2013-2014, and her mortgage went into default.

37.     In or around 2013-2014, Plaintiff learned about the possibility of a mortgage loan modification and submitted a HAMP application to Defendant.

38.     Defendant used its mortgage loan modification software to calculate Plaintiff's NPV which resulted in an incorrect NPV negative result.

39.     Had Defendant's software not been faulty, or had Defendant used the federal government's free software, the Plaintiff's NPV calculation would have resulted in a correct NPV positive result.

40.     Defendant's incorrect calculation caused Defendant to deny Plaintiff's application for a mortgage loan modification.

41.     The denial of Defendant's application caused her even greater financial hardship, and she could not avoid foreclosure of her home.

42.     Defendant later foreclosed on Plaintiff's home in or around 2014-2015, resulting in Plaintiff losing her home.

43.     If Plaintiff had been approved for a trial modification, she could have avoided foreclosure and would not have lost her home.

44.     Plaintiff was forced to find a new house and currently pays approximately $1,000 a month in rent, substantially more to afford this new house.

45.    Plaintiff received a letter dated July 2, 2019 from Defendant stating that her mortgage loan modification application was erroneously denied based on a "faulty calculation." "If it had been correct, [Plaintiff] would have been approved for a trial modification."

46.    Defendant's letter included a check for $24,700 which Defendant asserted would "help make up for [Plaintiff's] financial loss."

47.    Per Defendant's letter, Plaintiff's cashing the check did not waive or release any of Plaintiff's legal rights or remedies.

48.    Defendant's check is wholly insufficient to make up for Plaintiff's financial loss, including the greater financial hardship she experienced when her mortgage loan modification was denied, the foreclosure and loss of her home, loss of value and equity in her home, and subsequent expense, defamation, and inconvenience. As such, Defendant's mitigation effort is wholly insufficient to compensate for the financial burdens that Plaintiff and Class members were forced to experience as a result of Defendant's unlawful, unfair, deceptive, and unconscionable practices, negligence and otherwise wrongful conduct as alleged herein.

## CLASS ALLEGATIONS

49.    Plaintiff, individually and on behalf of all others similarly situated, brings this class action pursuant to Fed. R. Civ. P. 23.

50.    Plaintiff alleges the following Class and state subclass in the alternative:

**Nationwide Class:** All persons who (i) have or had a loan secured by real property in the United States, with Defendant as the mortgagee; (ii) applied for, were considered for, were qualified for, or were entitled to a loan modification pursuant to the requirements of government-sponsored enterprises (such as Fannie Mae and Freddie Mac), the U.S. Department of Treasury's Home Affordable Modification Program, or any government program; and (iii) were denied or not offered a loan modification by Defendant.

**Pennsylvania Subclass:** All persons who (i) have or had a loan secured by real property in Pennsylvania, with Defendant as the

mortgagee; (ii) applied for, were considered for, were qualified for, or were entitled to a loan modification pursuant to the requirements of government-sponsored enterprises (such as Fannie Mae and Freddie Mac), the U.S. Department of Treasury's Home Affordable Modification Program, or any government program; and (iii) were denied or not offered a loan modification by Defendant.

51.     The Class excludes the following: Defendant, its affiliates, and its current and former employees, officers and directors, and the Judge assigned to this case.

52.     Plaintiff reserves the right to modify, change, or expand the definitions of the Class based upon discovery and further investigation.

53.     *Numerosity*: The Class is so numerous that joinder of all members is impracticable. There are hundreds of Class members, evidenced by Defendant's admissions and nationwide business. The Class is ascertainable by records in Defendant's possession.

54.     *Commonality*: Questions of law or fact common to the class include, without limitation:

   a.   Whether Defendant failed to notify Plaintiff and Class members that they were qualified for a mortgage loan modification;

   b.   Whether Defendant's mortgage loan modification calculations were incorrect;

   c.   Whether Defendant's mortgage loan modification software was faulty;

   d.   Whether Defendant's mortgage loan modification calculations resulted in financial hardship or foreclosure of Plaintiff's or Class members' homes;

   e.   Whether Defendant knowingly, recklessly, or negligently miscalculated Plaintiff's and Class members' mortgage loan modifications;

   f.   Whether Defendant is liable for financial hardship and foreclosure experienced by Plaintiff and Class members;

   g.   Whether Defendant engaged in an unfair practice; and,

   h.   Whether Defendant failed to exercise reasonable care and diligence in calculating mortgage loan modifications.

55.     *Typicality*: The claims or defenses of Plaintiff are typical of the claims or defenses of the Class members. Plaintiff was denied a mortgage loan modification by Defendant due to Defendant miscalculating her NPV, resulting in greater financial hardship, including out-of-pocket expenses and foreclosure. Class members were injured and suffered damages in substantially the same manner as Plaintiff, Class members have the same claims against Defendant relating to the same course of conduct, and the Class members are entitled to relief under the same legal theories asserted by Plaintiff.

56.     *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Class and have no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions including, but not limited to, breaches of contract, negligence, and state consumer fraud statutes.

57.     *Predominance*: Questions of law or fact common to Class members predominate over any questions affecting only individual members. Common questions such as the extent, nature, causes, and results of Defendant's faulty mortgage loan modification software, Defendant's knowledge and concealment of the incorrect mortgage loan modification calculations, and Defendant's liability predominate over individual questions such as measurement of economic damages.

58.     *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this case because individual joinder of all members of the Class is impracticable and the amount at issue for each Class member would not justify the cost of litigating individual claims. Should individual Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on

10

a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale, and comprehensive supervision by a single court.

59. *Manageability*: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

60. Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(3).

61. Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

62. Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(2).

## CHOICE OF LAW ALLEGATIONS

63. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

64. Wells Fargo does substantial business in California, and a substantial portion of the Nationwide Class is located in California.

65. Wells Fargo is a wholly owned subsidiary of WFC, a bank holding company with a principal place of business in California.

66. Though Wells Fargo designates Sioux Falls, South Dakota as its primary office, it operates predominantly out of WFC's largest office and headquarters in San Francisco, California where WFC exerts full operational and managerial control over Wells Fargo.

67. WFC's board of directors meets and directs Wells Fargo's operations from the San Francisco office. WFC has numerous board committees, such as the audit and examination

committee, corporate responsibility committee, credit committee, finance committee, and risk committee that directly oversee Wells Fargo banking operations from the San Francisco office.

68.    Wells Fargo's San Francisco office accounts for the largest proportion of Wells Fargo's deposits and additionally holds a high proportion of deposits for regional and national corporations that are not based in the San Francisco area.

69.    The individual board members and executives ultimately responsible for the allegations alleged in this complaint primarily operate out of the San Francisco office.

70.    Accordingly, Wells Fargo's San Francisco office is effectively the national office, headquarters, and base of operations for Wells Fargo.

71.    California has a strong interest in applying its Unfair Competition Law ("UCL") to all Class members. The UCL regulates businesses that operate in and/or from California, like Wells Fargo. The inability to regulate California-based business operations that affect out-of-state residents would severely impact the effectiveness and legislative intent of the UCL.

## STATUTES OF LIMITATIONS

72.    Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

73.    Defendant is estopped from relying upon any statutes of limitations by reason of its fraudulent misrepresentation, suppression and concealment of material facts, and any applicable statutes of limitations are tolled by such conduct.

74.    Defendant did not inform Plaintiff or Class members about the faulty mortgage loan modification software or incorrect calculations even though Defendant knew about them for years.

75.     When Plaintiff and Class members were denied mortgage loan modifications, Defendant concealed the true reason for the denial and through words and actions misrepresented that the NPV calculations were correct.

76.     As a result of Defendant's omissions and misrepresentations, Plaintiff and Class members did not know about the faulty mortgage loan modification software or incorrect NPV calculations.

## CAUSES OF ACTION

## COUNT I

**Breach of Contract**
**On Behalf of Plaintiff and the Class**

77.     Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

78.     Plaintiff and Class members are or were homeowners who entered into security instruments with Defendant, typically in the form of mortgages, deeds of trust, or security deeds.

79.     Plaintiff and Class members' security instruments were owned, securitized, or guaranteed by a federal government agency (such as the Federal Housing Administration) or a government-sponsored enterprise (such as Fannie Mae and Freddie Mac).

80.     Implied in all contracts is a covenant of good faith and fair dealing.

81.     Under the terms of Plaintiff and Class members' security instruments and federal regulations, Defendant could not accelerate the remaining balance of the loan and initiate foreclosure proceedings without giving adequate notice of a default, informing the homeowner of the action required to cure the default, and informing the homeowner of available loss mitigation options to cure the default, such as a mortgage loan modification.

82.     Defendant breached Plaintiff and Class members' security instruments by informing them that they were ineligible for a mortgage loan modification to cure the default or failing to inform them that they were eligible for a mortgage loan modification to cure the default before initiating foreclosure proceedings, even though Plaintiff and Class members were eligible for a mortgage loan modification.

83.     A mortgage loan modification would have reduced Plaintiff and Class members' monthly mortgage payments to 31% of their monthly income, greatly reducing their financial hardship.

84.     As a result of Defendant's breach, Plaintiff and Class members were unable to modify their mortgage loans which caused them to experience damages in the form of financial hardship, loss of equity in their homes, damaged credit, loss of time and money, and foreclosure.

85.     Defendant breached the implied covenant of good faith and fair dealing by concealing from Plaintiff her eligibility for a mortgage loan modification which would have enabled her to avoid foreclosure and continue performing under the contract.

86.     Plaintiff and Class members are entitled to damages as a result of Defendant's unlawful, unfair, deceptive, and unconscionable practices described herein, including actual, statutory, punitive, and/or trebled damages to the extent permitted by law in an amount to be proven at trial.

## COUNT II

**Breach of Contract – Third-Party Beneficiary**
**On Behalf of Plaintiff and the Class**

87.     Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

14

88.     Plaintiff and Class members are or were homeowners who entered into security instruments with Defendant, typically in the form of mortgages, deeds of trust, or security deeds.

89.     Plaintiff and Class members' security instruments were owned, securitized, or guaranteed by a federal government agency (such as the Federal Housing Administration) or a government-sponsored enterprise (such as Fannie Mae and Freddie Mac).

90.     Defendant entered into agreements with federal government agencies and/or government-sponsored enterprises to provide homeowners who are in default with loss mitigation options. Pursuant to the agreements, Defendant would be required to offer loss mitigation options, such as a mortgage loan modification, to homeowners to lower their monthly mortgage payments to 38% of their monthly income. The federal government agencies and/or government-sponsored enterprises would then lower the monthly mortgage payment by an additional 7% of the homeowner's monthly income. Homeowners, therefore, would pay only 31% of their monthly income while Defendant still would receive an amount equal to 38% of the homeowner's monthly income. Accordingly, Plaintiff and Class members were the intended third-party beneficiaries of Defendant's agreements with federal government agencies and/or government-sponsored enterprises.

91.     Under the terms of Defendant's agreements with federal government agencies and/or government-sponsored enterprises and federal regulations, Defendant could not accelerate the remaining balance of the loan and initiate foreclosure proceedings without giving the homeowner adequate notice of a default, informing the homeowner of the action required to cure the default, and informing the homeowner of available loss mitigation options to cure the default, such as a mortgage loan modification.

92.     Defendant breached its agreements with federal government agencies and/or government-sponsored enterprises and violated federal regulations by informing Plaintiff and Class members that they were ineligible for a mortgage loan modification to cure their default or failing to inform them that they were eligible for a mortgage loan modification to cure their default before initiating foreclosure proceedings, even though Plaintiff and Class members were eligible for a mortgage loan modification.

93.     A mortgage loan modification would have reduced Plaintiff and Class members' monthly mortgage payments to 31% of their monthly income, greatly reducing their financial hardship.

94.     As a result of Defendant's breach, Plaintiff and Class members were unable to modify their mortgage loans which caused them to experience damages in the form of financial hardship, loss of equity in their homes, damaged credit, loss of time and money, and foreclosure.

95.     As third-party beneficiaries, Plaintiff and Class members are entitled to damages as a result of Defendant's unlawful, unfair, deceptive, and unconscionable practices described herein, including actual, statutory, punitive, and/or trebled damages to the extent permitted by law in an amount to be proven at trial.

## COUNT III

**Negligence**
**On Behalf of Plaintiff and the Class**

96.     Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

97.     Plaintiff and Class members are or were homeowners who entered into security instruments with Defendant, typically in the form of mortgages, deeds of trust, or security deeds.

98.     Plaintiff and Class members' security instruments were owned, securitized, or guaranteed by a federal government agency (such as the Federal Housing Administration) or a government-sponsored enterprise (such as Fannie Mae and Freddie Mac).

99.     Under the terms of Plaintiff and Class members' security instruments and federal regulations, Defendant could not accelerate the remaining balance of the loan and initiate foreclosure proceedings without giving adequate notice of a default, informing the homeowner of the action required to cure the default, and informing the homeowner of available loss mitigation options to cure the default, such as a mortgage loan modification.

100.    As a loan servicer, Defendant had superior knowledge of the mortgage loan modification process and eligibility requirements and had a responsibility for determining mortgage loan modification eligibility. Defendant knew that its determination of Plaintiff and Class members' mortgage loan modification eligibility would affect whether Plaintiff and Class members could modify their mortgage loans. Defendant knew that an incorrect determination of Plaintiff and Class members' mortgage loan modification eligibility would cause Plaintiff and Class members to experience financial hardship. Therefore, Defendant owed a duty to Plaintiff and Class members to exercise reasonable care and diligence in determining mortgage loan modification eligibility.

101.    Defendant knowingly and willfully undertook its duty of reasonable care and diligence in determining mortgage loan modification eligibility by virtue of operating as a national bank subject to federal law, entering into security instruments with Plaintiff and Class members, and entering into agreements with federal government agencies and/or government-sponsored enterprises to offer mortgage loan modifications to homeowners.

102.    Defendant breached its duty to Plaintiff and Class members by failing to exercise reasonable care and diligence in calculating NPVs, auditing the mortgage loan modification calculation software, ensuring compliance with industry standards and federal regulations, and informing Plaintiff and Class members that they were ineligible for a mortgage loan modification to cure the default or failing to inform them that they were eligible for a mortgage loan modification to cure the default before initiating foreclosure proceedings, even though Plaintiff and Class members were eligible for a mortgage loan modification.

103.    When Defendant discovered that its mortgage loan modification calculation software was faulty and that previous NPV calculations were incorrect, Defendant knew that Plaintiff and Class members were erroneously denied mortgage loan modifications. Defendant knew that the erroneous denials caused Plaintiff and Class members to experience financial hardship. Therefore, Defendant owed a duty to Plaintiff and Class members to exercise reasonable care and diligence in informing Plaintiff and Class members of their mortgage loan modification eligibility and mitigating any resulting financial hardship.

104.    Defendant breached its duty to Plaintiff and Class members by failing to promptly inform Plaintiff and Class members that they were eligible for mortgage loan modifications after discovering that they were erroneously denied mortgage loan modifications and failing mitigate any resulting financial hardship from the erroneous denial.

105.    A mortgage loan modification would have reduced Plaintiff and Class members' monthly mortgage payments to 31% of their monthly income, greatly reducing their financial hardship.

106.    As a result of Defendant's negligence, Plaintiff and Class members were unable to modify their mortgage loans and were unaware that they were erroneously denied mortgage loan

modifications which caused them to experience damages in the form of financial hardship, loss of equity in their homes, damaged credit, loss of time and money, and foreclosure.

107.    The harm caused by a breach of Defendant's duty was readily foreseeable and flowed directly from the breach.

108.    Plaintiff and Class members are entitled to damages as a result of Defendant's unlawful, unfair, deceptive, and unconscionable practices described herein, including actual, statutory, punitive, and/or trebled damages to the extent permitted by law in an amount to be proven at trial.

## COUNT IV

### Wrongful Foreclosure
### On Behalf of Plaintiff and the Class

109.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

110.    Plaintiff and Class members are or were homeowners who entered into security instruments with Defendant, typically in the form of mortgages, deeds of trust, or security deeds.

111.    Plaintiff and Class members' security instruments were owned, securitized, or guaranteed by a federal government agency (such as the Federal Housing Administration) or a government-sponsored enterprise (such as Fannie Mae and Freddie Mac).

112.    Under the terms of Plaintiff and Class members' security instruments and federal regulations, Defendant could not accelerate the remaining balance of the loan and initiate foreclosure proceedings without giving adequate notice of a default, informing the homeowner of the action required to cure the default, and informing the homeowner of available loss mitigation options to cure the default, such as a mortgage loan modification.

113.    Defendant breached Plaintiff and Class members' security instruments by informing them that they were ineligible for a mortgage loan modification to cure the default or failing to inform them that they were eligible for a mortgage loan modification to cure the default before initiating foreclosure proceedings, even though Plaintiff and Class members were eligible for a mortgage loan modification.

114.    Defendant wrongfully foreclosed on Plaintiff and Class members' homes because Defendant did not notify Plaintiff and Class members that they were eligible for a mortgage loan modification before initiating foreclosure proceedings.

115.    As a result of Defendant's wrongful foreclosure, Plaintiff and Class members lost their homes.

116.    Plaintiff and Class members are entitled to restitution as a result of Defendant's unlawful, unfair, deceptive, and unconscionable practices described herein, including the full value of the home and/or equity lost as a result of the wrongful foreclosure to the extent permitted by law in an amount to be proven at trial.

## COUNT V

### Unjust Enrichment
### On Behalf of Plaintiff and the Class

117.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

118.    Plaintiff and Class members are or were homeowners who entered into security instruments with Defendant, typically in the form of mortgages, deeds of trust, or security deeds.

119.    Plaintiff and Class members' security instruments were owned, securitized, or guaranteed by a federal government agency (such as the Federal Housing Administration) or a government-sponsored enterprise (such as Fannie Mae and Freddie Mac).

20

120.    Under the terms of Plaintiff and Class members' security instruments and federal regulations, Defendant could not accelerate the remaining balance of the loan and initiate foreclosure proceedings without giving adequate notice of a default, informing the homeowner of the action required to cure the default, and informing the homeowner of available loss mitigation options to cure the default, such as a mortgage loan modification.

121.    Defendant breached Plaintiff and Class members' security instruments by informing them that they were ineligible for a mortgage loan modification to cure the default or failing to inform them that they were eligible for a mortgage loan modification to cure the default before initiating foreclosure proceedings, even though Plaintiff and Class members were eligible for a mortgage loan modification.

122.    Defendant wrongfully foreclosed on Plaintiff and Class members' homes because Defendant did not notify Plaintiff and Class members that they were eligible for a mortgage loan modification before initiating foreclosure proceedings.

123.    As a result of Defendant's wrongful foreclosure, Defendant took possession of Plaintiff and Class members' homes.

124.    It would be unjust for Defendant to retain the value of Plaintiff and Class members' homes.

125.    Plaintiff and Class members are entitled to restitution as a result of Defendant's unlawful, unfair, deceptive, and unconscionable practices described herein, including the full value of the home and/or equity lost as a result of the wrongful foreclosure to the extent permitted by law in an amount to be proven at trial.

## COUNT VI

### Fraudulent Concealment
### On Behalf of Plaintiff and the Class

126.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

127.    Plaintiff and Class members are or were homeowners who entered into security instruments with Defendant, typically in the form of mortgages, deeds of trust, or security deeds.

128.    Plaintiff and Class members' security instruments were owned, securitized, or guaranteed by a federal government agency (such as the Federal Housing Administration) or a government-sponsored enterprise (such as Fannie Mae and Freddie Mac).

129.    Under the terms of Plaintiff and Class members' security instruments and federal regulations, Defendant could not accelerate the remaining balance of the loan and initiate foreclosure proceedings without giving adequate notice of a default, informing the homeowner of the action required to cure the default, and informing the homeowner of available loss mitigation options to cure the default, such as a mortgage loan modification.

130.    Defendant knew around or before August 2013 that its mortgage loan modification software was faulty and had caused hundreds of NPVs to be calculated incorrectly, resulting in Plaintiff and Class members being erroneously denied mortgage loan modifications.

131.    Even though Defendant had knowledge of the faulty software and incorrect calculations, Defendant continued to use the faulty software.

132.    Defendant concealed from Plaintiff and Class members that the NPV calculations were incorrect and that Plaintiff and Class members were eligible for a mortgage loan modification. Instead, Defendant informed Plaintiff and Class members that they were ineligible for a mortgage loan modification.

133.     Defendant concealed the incorrect NPV calculations from Plaintiff and Class members until 2018 when they admitted via letter that the calculations were incorrect.

134.     A mortgage loan modification would have reduced Plaintiff and Class members' monthly mortgage payments to 31% of their monthly income, greatly reducing their financial hardship.

135.     As a result of Defendant's fraudulent concealment, Plaintiff and Class members were unable to modify their mortgage loans which caused them to experience damages in the form of financial hardship, loss of equity in their homes, damaged credit, loss of time and money, and foreclosure.

136.     Plaintiff and Class members are entitled to damages as a result of Defendant's unlawful, unfair, deceptive, and unconscionable practices described herein, including actual, statutory, punitive, and/or trebled damages to the extent permitted by law in an amount to be proven at trial.

## COUNT VII

### Defamation
### On Behalf of Plaintiff and the Class

137.     Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

138.     Plaintiff and Class members are or were homeowners who entered into security instruments with Defendant, typically in the form of mortgages, deeds of trust, or security deeds.

139.     Under the terms of Plaintiff and Class members' security instruments and federal regulations, Defendant could not accelerate the remaining balance of the loan and initiate foreclosure proceedings without giving adequate notice of a default, informing the homeowner of

the action required to cure the default, and informing the homeowner of available loss mitigation options to cure the default, such as a mortgage loan modification.

140.    Defendant breached Plaintiff and Class members' security instruments by informing them that they were ineligible for a mortgage loan modification to cure the default or failing to inform them that they were eligible for a mortgage loan modification to cure the default before initiating foreclosure proceedings, even though Plaintiff and Class members were eligible for a mortgage loan modification.

141.    As a result of Defendant's breach, Plaintiff and Class members were unable to modify their mortgage loans which caused them to experience greater financial hardship and foreclosure.

142.    Defendant made statements to credit reporting agencies that Plaintiff and Class members were unable to make payments on their mortgages and were not eligible for a loan modification, resulting in default and foreclosure.

143.    Defendant's statements were materially false because Plaintiff and Class members were eligible for a loan modification and their defaults and foreclosures were due to Defendant's breach of contract, negligence, misrepresentations, and concealment regarding Plaintiff and Class members' eligibility for a loan modification.

144.    Defendant knew or should have known that its statements were materially false because of Defendant's industry knowledge, notice of laws and regulations relating to mortgages, mortgage loan modifications, and foreclosures, and Defendant's knowledge of its own software used to make loan modification eligibility calculations. Defendant therefore acted knowingly, recklessly, negligently, and/or maliciously.

145.    Defendant's statements substantially injured Plaintiff and Class members' credit, credit scores, and reputation.

146.    The impact of Defendant's statements makes it more difficult for Plaintiff and Class members to apply for a loan or credit, forcing Plaintiff and Class members to pay higher interest rates for future loans and credit.

147.    Plaintiff and Class members will need to expend time and money correcting their false credit reports due to Defendant's statements.

148.    The impact of Defendant's statements will likely have a long-lasting or permanent effect on Plaintiff and Class members' credit due to the difficulty of correcting a false credit report.

149.    Plaintiff and Class members are entitled to damages as a result of Defendant's unlawful, unfair, deceptive, and unconscionable practices described herein, including actual, statutory, punitive, and/or trebled damages to the extent permitted by law in an amount to be proven at trial.

### COUNT VIII

**Violation of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**On Behalf of Plaintiff and the Class**

150.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

151.    The California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

152.    Plaintiff and Class members are or were homeowners who entered into security instruments with Defendant, typically in the form of mortgages, deeds of trust, or security deeds.

153.     Plaintiff and Class members' security instruments were owned, securitized, or guaranteed by a federal government agency (such as the Federal Housing Administration) or a government-sponsored enterprise (such as Fannie Mae and Freddie Mac).

154.     Under the terms of Plaintiff and Class members' security instruments and federal regulations, Defendant could not accelerate the remaining balance of the loan and initiate foreclosure proceedings without giving adequate notice of a default, informing the homeowner of the action required to cure the default, and informing the homeowner of available loss mitigation options to cure the default, such as a mortgage loan modification.

155.     Plaintiff and Class members reasonably relied on the terms of the security instruments that mandated consideration for mortgage loan modifications when entering into the security instruments.

156.     Defendant knew around or before August 2013 that its mortgage loan modification software was faulty and had caused hundreds of NPVs to be calculated incorrectly, resulting in Plaintiff and Class members being erroneously denied mortgage loan modifications.

157.     Even though Defendant had knowledge of the faulty software and incorrect calculations, Defendant continued to use the faulty software.

158.     Defendant concealed from Plaintiff and Class members that the NPV calculations were incorrect and that Plaintiff and Class members were eligible for a mortgage loan modification. Instead, Defendant informed Plaintiff and Class members that they were ineligible for a mortgage loan modification.

159.     Plaintiff and Class members reasonably relied on Defendant's determination that they were ineligible for a mortgage loan modification.

160.    Defendant concealed the incorrect NPV calculations from Plaintiff and Class members until 2018 when they admitted via letter that the calculations were incorrect.

161.    Defendant engaged in unfair or deceptive acts or practices by entering into security instruments with Plaintiff and Class members which mandated consideration for mortgage loan modifications and then concealing the incorrect NPV calculations from Plaintiff and Class members that would qualify them for a mortgage loan modification.

162.    A mortgage loan modification would have reduced Plaintiff and Class members' monthly mortgage payments to 31% of their monthly income, greatly reducing their financial hardship.

163.    As a result of Defendant's fraudulent concealment, Plaintiff and Class members were unable to modify their mortgage loans which caused them to experience damages in the form of financial hardship, loss of equity in their homes, damaged credit, loss of time and money, and foreclosure.

164.    Plaintiff and Class members are entitled to damages, equitable relief, and attorneys' fees and costs as a result of Defendant's unlawful, unfair, deceptive, and unconscionable practices described herein, including actual, statutory, punitive, and/or trebled damages, restitution, and attorneys' fees and costs to the extent permitted by law in an amount to be proven at trial.

## COUNT IX

**Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**73 Pa. Stat. Ann. § 201-1, *et seq.***
**On Behalf of Plaintiff and the Pennsylvania Subclass**

165.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

166.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-3, prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 2," including:

     a.   "Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;"

     b.   "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;"

     c.   "Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;"

     d.   "Advertising goods or services with intent not to sell them as advertised;"

     e.   "Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;" or,

     f.   "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

167.    Plaintiff, Class members, and Defendant are each a "person" within the meaning of 73 P.S. § 201-2(2).

168.    Defendant's "advertising, offering for sale, sale or distribution" of security instruments entered into by Plaintiff and Class members is "trade" and "commerce" within the meaning of 73 P.S. § 201-2(3).

169.    Plaintiff and Class members are or were homeowners who entered into security instruments with Defendant, typically in the form of mortgages, deeds of trust, or security deeds.

170.    Plaintiff and Class members' security instruments were owned, securitized, or guaranteed by a federal government agency (such as the Federal Housing Administration) or a government-sponsored enterprise (such as Fannie Mae and Freddie Mac).

171.    Under the terms of Plaintiff and Class members' security instruments and federal regulations, Defendant could not accelerate the remaining balance of the loan and initiate foreclosure proceedings without giving adequate notice of a default, informing the homeowner of the action required to cure the default, and informing the homeowner of available loss mitigation options to cure the default, such as a mortgage loan modification.

172.    Plaintiff and Class members reasonably relied on the terms of the security instruments that mandated consideration for mortgage loan modifications when entering into the security instruments.

173.    Defendant knew around or before August 2013 that its mortgage loan modification software was faulty and had caused hundreds of NPVs to be calculated incorrectly, resulting in Plaintiff and Class members being erroneously denied mortgage loan modifications.

174.    Even though Defendant had knowledge of the faulty software and incorrect calculations, Defendant continued to use the faulty software.

175.    Defendant concealed from Plaintiff and Class members that the NPV calculations were incorrect and that Plaintiff and Class members were eligible for a mortgage loan modification. Instead, Defendant informed Plaintiff and Class members that they were ineligible for a mortgage loan modification.

176.    Plaintiff and Class members reasonably relied on Defendant's determination that they were ineligible for a mortgage loan modification.

177.    Defendant concealed the incorrect NPV calculations from Plaintiff and Class members until 2018 when they admitted via letter that the calculations were incorrect.

178.    Defendant engaged in unfair or deceptive acts or practices by entering into security instruments with Plaintiff and Class members which mandated consideration for mortgage loan

modifications and then concealing the incorrect NPV calculations from Plaintiff and Class members that would qualify them for a mortgage loan modification.

179.    A mortgage loan modification would have reduced Plaintiff and Class members' monthly mortgage payments to 31% of their monthly income, greatly reducing their financial hardship.

180.    As a result of Defendant's fraudulent concealment, Plaintiff and Class members were unable to modify their mortgage loans which caused them to experience damages in the form of financial hardship, loss of equity in their homes, damaged credit, loss of time and money, and foreclosure.

181.    Plaintiff and Class members are entitled to damages, equitable relief, and attorneys' fees and costs as a result of Defendant's unlawful, unfair, deceptive, and unconscionable practices described herein, including actual, statutory, punitive, and/or trebled damages, restitution, and attorneys' fees and costs to the extent permitted by law in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for a judgment against Defendant as follows:

a.    For an order certifying the Class, appointing Plaintiff as Representative of the Class, and appointing the law firms representing Plaintiff as counsel for the Class;

b.    For a declaration that Defendant miscalculated Plaintiff's and Class members' NPVs resulting in failure to offer a mortgage loan modification;

c.    For damages as a result of Defendant's unjust, unlawful, unfair, deceptive, and unconscionable practices described herein, including actual, statutory, punitive, and/or trebled damages to the extent permitted by law in an amount to be proven at trial;

d.    For equitable relief as a result of Defendant's unjust, unlawful, unfair, deceptive, and unconscionable practices described herein, including restitution to the extent permitted by law in an amount to be proven at trial;

e.   Payment of costs and expenses of suit herein incurred;

f.   Both pre-and post-judgment interest on any amounts awarded;

g.   Payment of reasonable attorneys' fees and expert fees; and,

h.   Such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

Dated: December 11, 2019                Respectfully submitted,

*/s/  D. Aaron Rihn*
D. Aaron Rihn, Esquire
ROBERT PEIRCE & ASSOCIATES, P.C.
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Phone: (412) 281-7229
Fax: (412) 281-4229
Email: arihn@peircelaw.com

Daniel C. Levin, Esquire
Charles E. Schaffer, Esquire
Nicholas J. Elia, Esquire
LEVIN SEDRAN BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Email: dlevin@lfsblaw.com
        cschaffer@lfsblaw.com
        nelia@lfsblaw.com